IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PAMELA BINFORD,                     :

        Plaintiff           :       Civil Action 2:07-cv-1218

v.                                  :

OHIO DEP'T OF                       :       Magistrate Judge Abel
ADMINISTRATIVE SERVICES,
                                    :
        Defendant.

**ORDER**

Plaintiff Pamela Binford filed this action on November 28, 2007 against the Ohio Department of Administrative Services, the Office of Information Technology, nine individual defendants, and several John Does.[1]  On April 8, 2009, the Court granted partial judgment on the pleadings with respect to the Ohio Deparment of Administrative Services, Office of Information Technology, and the John Doe defendants.  (Doc. 25.)  This order also dismissed all claims except those brought under 42 U.S.C. §1983 against the individual defendants in their individual capacities.  This matter is now before the Court on the remaining Defendants' April 30, 2009 motion for summary judgment.  (Doc. 28.)  Plaintiff filed no reply to this

---

[1] As the Office of Information Technology is now a part of the Ohio Department of Administrative Services, this analysis will simply address them together.

1

motion.

Factual background.

The facts at issue, drawn from Plaintiff's complaint and her deposition, are extensively set forth in Defendants' motion for summary judgment. The Court will summarize them here. Plaintiff Pamela Binford ("Binford"), a 58-year-old black female, has been employed by the Ohio Department of Administrative Services ("DAS") from 1985 to the present. In January 2003, due to reorganization, Binford was transferred into a position as a Network Administrator 3 ("NA3"). She was to report directly to Defendant Brant Thomas ("Thomas"), who reported to Defendant William Ticknor, who reported to Defendant Gregory Pennington, who reported to Defendant George Hess. Her new position involved areas of responsibility, such as maintaining network servers, with which Binford had little experience. It required a great deal of additional training classes, to which Binford was sent.

Shortly after the beginning of her employment, Thomas provided her with a document setting forth goals for her to meet. However, Binford alleges that Thomas flatly refused to answer any questions she had about her new position or work procedures, and that he instructed her coworkers not to answer any of her questions either. She also claims that he kept a log of her activities, and that he monitored her email account.

On March 20, 2003, after Binford had been employed in the NA3 position for about two weeks, she applied for disability leave benefits. Her physician reported that she had been diagnosed with cervical spondylosis and depression. Binford's

leave was approved, and lasted until February 29, 2004. After her return from leave, Binford was given intensive training, which she found ineffective. After being hospitalized after becoming ill at work, Binford began a second disability leave on October 13, 2004. She requested that she be allowed to take her training books home to study during her leave, but was told that this was not permitted. On February 11, 2005, during this second disability, Binford was instructed to undergo a psychological exam pursuant to the terms of her disability leave. Afterwards, she was instructed by a payroll benefits manager, who oversaw disability leave, to return to work on March 23, 2005 or face termination. Binford later learned that the state-designated psychologist had opined that Binford should not return to work until May or June 2005. However, Binford's own treating psychologist had issued another report on March 11, 2005, which indicated that Binford could return to work as soon as March 23, 2005.

Upon her return to work, Binford did not request any special accommodations. However, she was on medication which made her drowsy, and also suffered from disorientation and short-term memory problems. She discovered that her books and notes from her earlier intensive training were missing, and was told that the books could not be replaced. Binford was also told that she could not repeat earlier classes. Developing a belief that she was being set up for failure, she requested to be downgraded in rank to a NA2. This request was denied.

Binford was reprimanded on at least three occasions during her employment at DAS. In September 2004, she was issued a written reprimand for failing to call

3

in sick for work at least half an hour before her scheduled starting time. In August 2004, Binford and a colleague were scheduled to attend a week of technical training classes. However, her colleague reported to Thomas that Binford had skipped Wednesday and half of Tuesday, and had left early on Monday, Thursday, and Friday, and that Binford had slept during the training. Binford claims that her colleague was told to lie about her attendance. The DAS Director issued her a 20-day working suspension to begin May 5, 2005. Binford, through her union, filed a grievance. On July 18, 2005, Binford was again issued a 20-day suspension, based upon findings that she had been asleep at her desk at three different times. Binford does not deny falling asleep, but claims that she notified her superiors that her medication might make her drowsy. She also claims that several other DAS employees arrived late for work or slept on the job and were not disciplined. Binford, through her union, filed a grievance of this suspension as well.

Binford, together with DAS and her union, executed a settlement agreement regarding these grievances on October 6, 2005. Under the terms of the agreement, the two suspensions were combined. Binford agreed to "waive any and all rights they may currently or subsequently possess to receive any reparation, restitution, or redress for the events which formed the basis of the aforementioned grievance, including the right to resort to administrative appeal or through the institution of legal action".

However, later in October 2005, she received a performance evaluation rating her performance as unsatisfactory, and noting that she had not shown the ability or

4

knowledge to carry out her duties.  Binford submitted a written response stating that she had been deprived of training or the ability to ask questions about her job.  On October 25, 2005, Binford was charged at a pre-disciplinary hearing with failing to complete two assigned tasks in a timely manner.  She stated at the hearing that she was unable to complete the tasks because of lack of training, an inability to understand the work, and because she had been on suspension during part of the time period.  She was also informed at the same time that there would soon be another pre-disciplinary hearing on different matters.

    Finally, on November 18, 2005, Binford, together with DAS and her union, executed a Last Chance Agreement ("LCA").  Under this Agreement, DAS agreed not to take any disciplinary action regarding prior events, and Binford agreed to be moved to a job as Telephone Operator 1, at a sixty percent pay cut.  The movement was to be effective November 27, 2005, and Binford was to report for duty on Monday, November 28, 2005.  The agreement provided for a one-year probationary period for Binford to comply with all policies and procedures, or face termination.  In the agreement, Binford acknowledged "the waiver of any contractual due process rights to the extent stated in this agreement", though, unlike the earlier agreement, it did not recite that she waived the right to sue regarding the events in question.  Binford states that she has had no work problems at all since her transfer, and she has since applied for and been accepted in a higher position as Customer Service Assistant 2.

**Summary judgment**.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (concluding that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary

6

judgment, however, the nonmoving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324. Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

This case is somewhat unusual in that Plaintiff has not opposed summary judgment. When a motion for summary judgment is unopposed "there is no duty imposed on the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.' *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir. 1989), citing *Frito-Lay Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)." *Guarino v. Brookfield Township*, 980 F.2d 399, 404 (6th Cir. 1992). When the opposing party fails to respond to a motion for summary judgment, the trial judge concludes that the facts asserted to support the motion are uncontroverted. *Guarino*, 980 F.2d at 405-07. As Plaintiff did not dispute any of the facts which Defendant presented, the Court has no basis for concluding that genuine issues of material fact exist, except where the record reflects obvious contradictions. The Court's analysis will therefore be limited to determining whether, on the basis of the arguments which Defendants cite, they are entitled to judgment as a matter of law.

7

**Plaintiff's claims**.

The Court previously dismissed all of Plaintiff's claims except those brought under 42 U.S.C. §1983 against the individual defendants in their individual capacities. Accordingly, it will not now detail the other claims set forth in her complaint. Binford claims that Defendants, acting under color of state law, violated her civil rights by discriminating against her on the basis of her race, sex, and disability. (Doc. 1-2 at 10-11.) Such claims are analyzed in the same manner as claims brought under Title VII of the Civil Rights Act, 42 U.S.C. §2000e *et seq. Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000). She must prove that Defendants intentionally deprived her of constitutional or statutory rights on the basis of her membership in a recognized class. Furthermore, she is required to demonstrate that the adverse employment decision would not have been made but for her membership. *Id.*, citing *Boger v. Wayne County*, 950 F.2d 316, 325 (6th Cir. 1991).

The statute of limitations for an Ohio plaintiff bringing a §1983 claim is two years. *Banks v. City of Whitehall*, 344 F.2d 550, 553 (6th Cir. 2003). This action commenced on November 27, 2007, when Binford filed her motion for leave to proceed *in forma pauperis*, and attached the complaint. (Doc. 1.) The acts of discrimination upon which Binford bases her §1983 claim, therefore, must have taken place on or after November 27, 2005 to be actionable. The only relevant acts which took place in that timeframe were the effective date of Binford's new lower position (Sunday, November 27, 2005) and her first date of work in that position

8

(Monday, November 28, 2005). The date upon which Plaintiff *entered into* the Last Chance Agreement which effected the demotion was November 18, 2005.

A plaintiff makes out a *prima facie* claim of discrimination by showing that (1) she is a member of a protected group, (2) she was subject to an adverse employment decision, (3) she was qualified for the job, and (4) she was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. *Miller v. City of Canton*, 319 Fed.Appx. 411, 419, quoting *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001). To establish the existence of an "adverse employment decision", a plaintiff must show that she has suffered a "materially adverse" change in the terms or conditions of employment because of her employer's actions. *Allen v. Michigan Dept. of Corrections*, 165 F.3d 405, 410 (6th Cir. 1999), citing *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). That Plaintiff moved from being a Network Administrator 3 to a Telephone Operator 1, at a significant reduction in salary, was certainly a materially adverse change in her terms or conditions of employment. The question at hand, however, is whether this change was "because of her employer's actions".

The November 27, 2009 demotion – the only alleged discriminatory action which took place within the actionable timeframe – was implemented pursuant to the Last Chance Agreement. It was an act which occurred as the result of a contract which Binford entered into with the DAS. Plaintiff voluntarily agreed to accept the new job in exchange for DAS' agreement to drop the pending disciplinary proceedings. To the extent that the transfer was an "adverse action", it was not an

9

action taken by her employer, it was an action taken by Binford herself. *See, e.g., Pownall v. City of Perrysburg*, 63 Fed.Appx. 819, 824 (6th Cir. 2003) (an employee who voluntarily resigns cannot claim that she suffered an adverse employment decision); *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999). Moreover, the Agreement itself recites that because "the parties wish to ensure that the employee is able to successfully perform all the essential duties of her assigned position, the parties hereto wish to reach agreement on an appropriate classification for the employee, and all matters and causes of action arising from this issue." (Doc. 27-40 at 1.) Plaintiff having agreed that Telephone Operator 1 was an "appropriate classification", she cannot now argue that the transfer to which she assented was an adverse employment decision caused by discrimination.

Plaintiff did allege in her complaint that she had been "given an ultimatum to accept an entry-level position or be terminated because of her race, sex, disability." (Doc. 1-2 at 10.) Furthermore, she characterized the transfer as a "forced demotion" (Doc. 1-2 at 12.) However, Binford also pled that, when she asked why the transfer would be into the lesser Telephone Operator 1 position, she was informed that an employee had just retired from the position and that it was the only one open at the time. (Doc. 1-2 at 8.) In any case, even assuming that the November 18, 2005 Last Chance Agreement was the result of coercion or deceit, such wrongful acts must necessarily have occurred before November 27, 2005 and are therefore time-barred.

Because it is barred by the statute of limitations, Plaintiff's only remaining

claim – that under 28 U.S.C. §1983 – must fail as a matter of law. Therefore, Defendants' motion for summary judgment (Doc. 28) is **GRANTED**. The Clerk of Court is instructed to enter judgment in favor of Defendants, and to close this case.

s/Mark R. Abel
United States Magistrate Judge